## WARD v. ARCHER.

No. 25028. Sept. 17, 1935.

M. F. Hudson and Bascom Coker, for plaintiff in error.

Lake & Carlton and Tom Finney, for defendant in error.

PER CURIAM. On the afternoon or evening of July 24, 1930, Lee Lloyd, a little girl, was run over by Freeman Going, a son of the defendant below, Silsainey Johnson Ward, while driving at Eagletown, near De Queen, Ark. The little girl was taken immediately by her mother and some other unnamed persons to the hospital of the plaintiff below, C. A. Archer, at De Queen, where the latter rendered hospital services, medical and surgical treatment for the child, over a period of six weeks or more. Some days after the injury, the exact time being uncertain, Mrs. Ward went to the hospital and had some conversation with Dr. Archer, the substance and legal effect of this conversation being in sharp dispute. Subsequently, Dr. Archer brought this action against Mrs. Ward for

his medical, surgical and hospital services in the amount of $737.85, which, after answer, filed in the nature of a general denial, was tried by the court, a jury being waived, and judgment was rendered in favor of Archer for the amount claimed in the petition. To this judgment exception was. duly taken, a motion for a new trial was filed, which, upon consideration, was overruled, and from the order overruling the motion for a new trial this appeal is prosecuted. Plaintiff in error was defendant below, and defendant in error was plaintiff below. They will be hereafter referred to as in the trial court.

The position of the defendant, urged in her brief and argument, and maintained throughout the trial in the court below, may be fairly understood from three questions, namely:

(1) Did a contract arise, "as matter of law", between the mother of Lee Lloyd and the plaintiff, Archer, by which the former was bound to pay for the services rendered by the latter?

(2) Did the defendant, Ward, make a contract with the plaintiff, Archer, to pay for such services?

(3) If the defendant, Ward, did make such contract, or promise to pay for services, was it within the statute of frauds, and therefore void?

These will be considered in order.

1. Under Oklahoma Statutes 1931, sections 9450, 9451, and 9452, it is provided:

"A contract is either express or implied."

"An express contract is one, the terms of which are stated in words."

"An implied contract is one, the existence and terms of which are manifested by conduct."

In the case of First Nationa' Bank of Okmulgee v. Matlock et al., 9) Okla. 150, 226 P. 328, this court recognizes two kinds of implied contracts, namely one arising "by implication of fact", and another arising "by imp'ication of law." Th's dist'n:tion is sometimes maintained by referring to the former as an "implied" contract, properly speaking, and the latter as a "quasi", or a "constructive" contract. In one the contract defines the duty, in the other, the duty defines the contract.

In the case now under consideration there is no express contract. Neither the mother of the child, nor Dr. Archer, nor the hospital superintendent, nor any other person testified anything at all about payment for the services to be rendered the child being agreed upon or even mentioned, when she was received at the hospital. The evidence fails to disclose any conversation at all between Dr. Archer and the mother of Lee Lloyd.

It is equally certain that no contract implied in fact is shown by the evidence. The mother of Lee Lloyd would, perhaps, be under an implied promise to pay, if that had been accepted and acted upon by Dr. Archer. However, the latter in his testimony emphatically denies that he ever extended credit to the child, or its parents, or to anyone else, until after his conversation with Mrs. Ward some two or three days after the child had been received at the hospital and given surgical treatment. There is no evidence in the record contrary to this.

Likewise, the plaintiff was under no duty, arising by implication of law, to extend credit to the child or its parents. The evidence shows, and it is not disputed, that the child would have been received at the hospital, and would have been given the same emergency operative treatment regardless of pay, or where pay was to come from. The law does not require a person to extend credit unless he wishes to do so.

The mother of Lee Lloyd is rather a mythical person, in this case, anyway. Like the mother of the Gracchi, and Peter's wife's mother, she is not even named in the record. Like them, she was devoted to her child, and stood by for any need that might arise. If she was obligated to pay the debt, surely someone would have been able to have given her name. She was not produced as a witness. None of the citizens who came with her were produced. There is no fact or circumstance disclosed in the record tending to show that the plaintiff at any time relied on the faith and credit of the child, or the mother, for his compensation. It must, therefore, be concluded that no contractual relation, either express or implied in fact or in law, existed between the plaintiff, Archer, and the mother of Lee Lloyd.

2. The next question then is, whether the defendant, Ward, contracted to pay the debt. This question is answered by the trial court in its judgment. The plaintiff contended that the defendant agreed to pay for all hospital, medical, and surgical treatment for the child. This the defendant denied. The sharp conflict thus created was determined by the court in favor of the plaintiff. It is well settled in Oklahoma that in such case the determination of the trial court wi'l not be disturbed. Every facility is offered that court for determining the preponderance of evidence. The witnesses are there in person.

Their appearance and manner of testifying, as well as the things they say, give to the trial court opportunity to separate the credible from the incredible. This court has not that facility, and must therefore accept the judgment of the trial court that the defendant, Ward, promised to pay, and that the plaintiff, Archer, accepted that promise and acted upon it by extending credit to her for the entire service.

3. Since, then, no contract existed between the mother of Lee Lloyd and the plaintiff to pay for the services rendered the injured child, and since such contract did exist between the defendant, Ward, and the plaintiff, Archer, it follows of necessity that the contract could not be within the statute of frauds. (O. S. 1931, sec. 9455.) There was no primary liability in the case other than that which was assumed by the defendant, Ward. The statute of frauds is not in the case. There was no error in overruling the demurrer to the evidence of the plaintiff, and the motion for a new trial and the judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys Mather M. Eakes, W. C. Franklin, and Ray S. Fellows in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Eakes and approved by Mr. Franklin and Mr. Fellows, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

McNEILL, C. J., and RILEY, BUSBY, PHELPS, and GIBSON, JJ., concur.